## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE:  AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION | : : : : | MDL Docket No. 1426 |

## ORDER

AND NOW, this ___ day of _____, 2006, upon consideration of Plaintiffs' Motion to Compel Akzo Nobel Car Refinishes B.V. and Akzo Nobel Coatings Inc. to Provide Discovery, Pursuant to the Parties' Settlement Agreement and the response of Akzo Nobel Car Refinishes B.V. and Akzo Nobel Coatings Inc., IT IS ORDERED that the motion be and the same hereby is DENIED.

BY THE COURT:

_____
R. Barclay Surrick, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IN RE:  AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION | : : : : | MDL Docket No. 1426 |

## AKZO NOBEL'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Non-parties Akzo Nobel Car Refinishes B.V. and Akzo Nobel Coatings Inc.[1] ("Akzo")

oppose Plaintiffs' motion to compel wide-ranging discovery from Akzo on the following

grounds.

### I.   INTRODUCTION

Plaintiffs ask this Court to compel Akzo to provide exactly the sort of "burdensome and

expensive discovery" that Plaintiffs promised Akzo would avoid by paying $18,750,000 to settle

this litigation.[2]  As expressly provided in the parties' Settlement Agreement:

> A material factor influencing Akzo's decision to settle the Actions is its desire to
> be free from burdensome and expensive discovery.  Plaintiffs agree that  .  Akzo,
> including its officers and employees, shall be treated by Plaintiffs as a non-party
> for purposes of discovery, and shall not be required to respond to any pending
> discovery requests or obligations.  Akzo shall not be subject to further or

---

[1]  Prior to becoming non-parties, by Stipulation and Order dated February 22, 2002, Defendants Akzo Nobel Car Refinishes B.V. and Akzo Nobel Coatings Inc. were substituted for Akzo Nobel N.V. and Akzo Nobel Inc.

[2]  Settlement Agreement ¶ 16, copy attached to Plaintiffs Motion to Compel at Exhibit 2 to the Affidavit of Warren Rubin.

additional discovery except on [specified] terms ... [designed for] purposes of minimizing the burden of discovery on Akzo.[3]

Yet now Plaintiffs seek an order compelling Akzo to produce what it never agreed to provide and specifically bargained to avoid, namely: (1) producing twelve individuals, most of whom are not current officers or employees, "as soon as possible" for interviews and, if Plaintiffs so decide, depositions; (2) searching for personnel [personal] files for an individual who retired eighteen years ago, in 1988, five years before what Plaintiffs themselves define as the start of the "relevant period"; (3) searching for and producing voluminous documents in response to document requests that were pending when Akzo settled and to which Plaintiffs explicitly agreed Akzo "shall not be required to respond"; and (4) making information technology personnel "readily available to answer any questions concerning Akzo's transactional data and meet with Plaintiffs' IT expert."[4]

Plaintiffs ask the Court for this discovery despite the fact that there are no pending discovery requests to which a response may be compelled. The only discovery request served on Akzo prior to Plaintiffs' Motion to Compel was Plaintiffs' First Set of Requests for Production of Documents Directed to All Defendants. Yet, under the Settlement Agreement, Akzo is not required to respond to this or any other pending discovery requests or obligations.[5] With regard to Plaintiffs' wish list of "interviews or depositions," Plaintiffs have served none of the identified individuals with subpoenas or (for those who reside in Europe) letters rogatory. Such individuals are simply not properly before the Court. The Settlement Agreement makes it crystal clear that

---

[3]  *Id.*

[4]  Plaintiff's Memorandum of Law in Support of Motion to Compel Limited Discovery ("Plaintiff's Memorandum") at 5-6.

[5]  Settlement Agreement ¶ 16. ("Akzo ... shall not be required to respond to any pending discovery requests or obligations.").

Akzo *and its employees* must be treated as non-parties. Moreover, the Settlement Agreement does not exempt Plaintiffs from the normal rules of service of discovery requests on non-parties. The Agreement expressly speaks of *"serving any* new discovery request," although such service may be deferred until after Plaintiffs have met and conferred with Akzo (*"prior to serving any* new discovery request . . . Plaintiffs' co-lead counsel shall meet and confer with Akzo's counsel"). Only in the event that the meet and confer yields disagreement is the matter ripe for proper service of the requests and submission of the dispute to the Court, *after* which the Court will retain jurisdiction over "all issues related thereto." As discussed below, however, Plaintiffs have not even satisfied their obligation to meet and confer with Akzo in regard to the great bulk of their discovery requests.[6]

In addition to their failure to serve the discovery they seek to compel, and to properly meet and confer, Plaintiffs have also disregarded the Settlement Agreement's requirements that Plaintiffs, before seeking further or additional discovery from Akzo, (1) serve all remaining Defendants with document requests and resolve all motions to compel; and (2) substantially complete taking depositions of the remaining Defendants. "[F]or purposes of minimizing the burden of discovery on Akzo" Plaintiffs must initially seek discovery from the "remaining Defendants," before seeking any further or additional discovery from Akzo, its officers or employees.[7] Akzo specifically bargained for this protection against being the target of inefficient, scatter-shot and potentially unnecessary discovery taken in a disorderly last-minute rush.

---

[6] *See* October 5, 2005 letter from Warren Rubin to Akzo counsel, setting forth the limited discovery that Plaintiffs and Akzo were discussing (Exhibit 4 to Rubin Declaration).

[7] Settlement Agreement ¶ 16(c).

3

Plaintiffs must seek the discovery they need in the litigation from the four defendants other than Akzo, and then, after meeting and conferring with Akzo's counsel, may serve additional discovery on Akzo to the extent reasonably necessary to fill gaps (if any) in the evidence. Yet instead of engaging in a diligent and phased discovery effort, Plaintiffs engaged in an unseemly rush to complete discovery against all current and former defendants, including Akzo, in the month remaining before the long-established June 1, 2006 discovery deadline [8] This conduct does not comply with Plaintiffs' Settlement Agreement with Akzo.

In sum, this Court should not compel Akzo to respond to discovery that has never even been served and that, in any event, has no basis under the Federal Rules or the terms of the parties' Settlement Agreement. The Plaintiffs have received the $18.75 million promised by Akzo under the Settlement. Akzo merely asks that the Plaintiffs keep their side of the bargain.

## II.   BACKGROUND

Plaintiffs' brought this litigation in 2001. Akzo subsequently reached a settlement with Plaintiffs, the terms of which are set forth in the parties' February 23, 2003 Settlement Agreement. Akzo was the first Defendant to settle.

Prior to settlement, Akzo produced over 110,000 pages of electronic and hard copy documents to Plaintiffs' and agreed to produce transactional data.[9] Each of the other defendants at the time provided extensive document discovery to Plaintiffs as well. The Court deemed this

---

[8] This deadline has now been extended to September 15, 2006 by the Court's Second Amended Pretrial Scheduling Order dated May 26, 2006.

[9] *See* Exhibit 1 to Declaration of Stephen McKenna, attached.

sufficient to support Plaintiffs' partial settlement with Akzo and granted final approval of the settlement on September 5, 2003.[10]

The Settlement Agreement approved by the Court explicitly stated that "[a] material factor influencing Akzo's decision to settle the actions is its desire to be free from burdensome and expensive discovery."[11] Plaintiffs agreed that upon execution of the Settlement Agreement Akzo, including its officers and employees, "shall be treated by Plaintiffs as a non-party for purposes of discovery" and "shall not be required to respond to any pending discovery requests or obligations."[12]

Plaintiffs further agreed that Akzo "shall not be subject to further or additional discovery" except on certain specified terms.[13] In order "to minimize the burden of discovery on Akzo," Plaintiffs agreed that:

> (1) they shall not seek any documentary discovery from Akzo until after Plaintiffs have served all remaining Defendants in the Actions with document requests and all motions to compel responses [to those requests] have been resolved;

> (2) they shall not seek to take any depositions of Akzo or its current or former officers or employees until after Plaintiffs have substantially completed taking depositions of the remaining Defendants and their current or former officers and employees in the Actions; and

> (3) prior to serving any new discovery request directed to Akzo or its current or former officers or employees, Plaintiffs co-lead counsel shall meet and confer with Akzo's counsel to seek agreement on the proposed discovery request . . . .[14]

---

[10] *See* September 5, 2003 Final Judgment Order, Exhibit 2 to McKenna Declaration.

[11] Settlement Agreement at ¶ 16, Exhibit 2 to Rubin Affidavit.

[12] *Id.*

[13] *Id.*

[14] *Id.* ¶ 16(c)

For its part, Akzo agreed to produce transactional data in electronic form,[15] to provide written declarations to authenticate documents,[16] and, subject to the conditions and limitations noted above, to make current officers and employees available for discovery and trial depositions.[17]

Akzo produced the requested transactional data to Plaintiffs.[18] Akzo also participated in a lengthy telephone conference with Plaintiffs and their experts in or around November of 2003 and provided follow-up regarding questions on Akzo's transactional data.[19]

On September 30, 2005, at Plaintiffs' request, Akzo's counsel and Plaintiffs' counsel met to discuss further discovery Plaintiffs wanted to seek from Akzo. Following that discussion, on October 5, 2005, Plaintiffs' counsel sent Akzo's counsel a letter setting forth what Plaintiffs termed "very limited discovery" they were seeking.[20] Plaintiffs' counsel proposed that Akzo respond to previously propounded and withdrawn Plaintiffs' Document Request No. 33 by producing the files for thirteen identified individuals and for certain trade associations.[21] Plaintiffs also requested interviews with three former employees and again sought access to a technical representative to answer questions related to transactional data.[22] However, unlike

---

[15] *Id.* ¶ 16(d)

[16] *Id.* ¶ 16(f)

[17] *Id.* ¶ 16(e) (Akzo is only required to make "current officers and employees available for discovery and trial depositions." It is not required to make former employees available, only to meet and confer with Plaintiffs' counsel about any such requests.)

[18] McKenna Declaration ¶ 2.

[19] *Id.* ¶ 3.

[20] *See* Exhibit 4 to Rubin Affidavit.

[21] *Id.*

[22] *Id.*

BASF and DuPont, which had settled with the Plaintiffs on April 23, 2004, Akzo had not agreed in its settlement to provide witness interviews or technical assistance with transactional data.[23]

Akzo, in the September 30 meeting and in an October 27, 2005 letter responding to Plaintiffs' October 5 letter, raised the requirement in the Settlement Agreement that Akzo be a discovery source of last resort.[24]  Akzo asked Plaintiffs to provide information regarding the discovery sought from remaining defendants, including DuPont and BASF, the defendants that settled after Akzo.[25]  Plaintiffs refused to provide any details regarding discovery from DuPont or BASF, instead telling Akzo that "we believe that this has no bearing on what plaintiffs are now requesting from Akzo pursuant to the Settlement Agreement because varying discovery obligations exist with respect to each defendant's Settlement Agreement."[26]

Notwithstanding these deficiencies, Akzo attempted to work with Plaintiffs in good faith. Without demanding a formal discovery request, but also without waiving its right to require one, Akzo searched for personal files for twelve of the thirteen individuals identified by Plaintiffs.[27] After searching and preparing the files located for production, Akzo told Plaintiffs' counsel that Akzo was prepared to produce the documents, but would also need to produce the documents to non-settling defendants Sherwin-Williams and PPG. After learning that non-settling defendants

---

[23] *See* Exhibit 3 to Rubin Affidavit at ¶ 17(c), (d) and (f), ("DuPont and BASF Corporation also agree to provide reasonable assistance to Plaintiffs in understanding their transactional data, including if appropriate, communications between technical personnel."  .  . "Plaintiffs may, if they desire, interview and/or depose up to eight witnesses from each of DuPont or BASF Corporation who are either current or former employees  .  . " To the extent that DuPont or BASF Corporation provides one or more current or former employees for interviews and/or depositions pursuant to this paragraph, the producing party will also produce to Plaintiffs any relevant documents in its possession from the files of the current employee witness  .  . ")

[24] *See* Exhibit 6 to Rubin Affidavit at 2 and 3.

[25] Exhibit 4 to Rubin Affidavit at 1

[26] *Id*

[27] The thirteenth individual, Van't Riet, retired in 1988.

would receive Akzo's documents as well, Plaintiffs never asked Akzo to deliver the documents.[28]

Akzo also agreed to once again make a person familiar with Akzo's transactional data available to answer Plaintiffs' questions (though Plaintiffs had apparently done nothing with Akzo's data following the November 2003 assistance). By this time, however, Akzo had no remaining employees familiar with the data. Nonetheless, Akzo retained a former employee as a consultant to answer Plaintiffs' questions.[29]

In addition to searching for personal files and answering further questions, Akzo also agreed to make a retired general manager, Larry Curry, available for an interview with Plaintiffs' counsel. Plaintiffs' counsel privately interviewed Mr. Curry for approximately half a day in Atlanta, Georgia on March 23, 2006.[30] Further, Akzo agreed that one of its market managers (a former Sherwin-Williams employee) would provide deposition testimony beyond the then current discovery cut-off.[31]

Akzo's reward for locating personal files, retaining a consultant to answer Plaintiffs' data questions and making individuals available for a private interview and deposition with Plaintiffs' counsel was Plaintiffs' Motion to Compel. That Motion was filed prior to Plaintiffs' meeting and conferring with Akzo counsel about additional discovery Plaintiffs wanted to seek and without serving any new discovery.

---

[28] *See* Memorandum in Support of Motion to Compel at 5, acknowledging Akzo was prepared to produce the files.

[29] McKenna Declaration ¶ 5.

[30] McKenna Declaration ¶6.

[31] *See* Exhibit 5 to McKenna Declaration.

Following the filing of their Motion to Compel, Plaintiffs, on May 11, sent Akzo a Notice of Deposition purporting to require Akzo to force twelve individuals to come to Atlanta, Georgia to give deposition testimony in the last week of May.[32] Of these individuals, only two are current Akzo employees who reside in the United States. Four are former U.S. employees that no longer work for Akzo. Three are European employees. And three are former employees believed to reside in Europe. The Notice of Deposition purports to require each of these twelve individuals to produce in Atlanta at their deposition "all documents identified in Schedule A." Schedule A is basically a recaptioned list of the documents requested in Plaintiffs' First Set of Request for Production of Documents Directed To All Defendants" served on defendants in this action on February 19, 2002, and withdrawn as to Akzo pursuant to its Settlement Agreement with Plaintiffs.

Akzo informed Plaintiffs' counsel in a letter on May 15 that the purported Notice of Deposition is wholly ineffective under the Federal Rules of Civil Procedure and under the Settlement Agreement.[33] Akzo informed Plaintiffs that as a non-party, it is under no obligation to respond to a Notice of Deposition, particularly one directed to so many non-employees and non-residents. In addition, Akzo informed Plaintiffs that Plaintiffs had failed to substantially complete depositions of the other four defendants before seeking depositions from Akzo, its officers and employees, as required.

Nonetheless, in its May 15 letter noting the deficiencies in the Notice, Akzo offered to discuss the discovery issues.[34] On May 18, Akzo counsel sent Plaintiffs' counsel a letter setting

---

[32] *See* Exhibit 3 to McKenna Declaration

[33] *See* Exhibit 4 to McKenna Declaration

[34] *Id* at 2.

forth several dates and times when he was available to discuss Plaintiffs' purported Notice of Deposition.[35] Plaintiffs' counsel did not respond.[36]

Akzo, as a non-party, is of course not aware of all the discovery that is taking place in the litigation. But Akzo is aware that Plaintiffs recently issued deposition notices and/or subpoenas to sixteen individuals believed to be employees or former employees of the remaining Defendants.[37] In addition, on May 5, Plaintiffs requested interviews and depositions of six BASF employees.[38] Thus, Plaintiffs have not complied with their obligation to substantially complete depositions of the remaining Defendants before turning to Akzo. Akzo is also aware that Plaintiffs have similarly failed to complete document discovery of the remaining Defendants. On April 28, 2006, Plaintiffs served their Fourth Set of Document Requests on Sherwin-Williams and PPG.[39]

---

[35] *See* Exhibit 5 to McKenna Declaration at 2.

[36] McKenna Declaration ¶ 9. On May 25 and 26, in relation to discussions concerning Akzo transactional data, Akzo's counsel did address discovery generally and possible compromises with Plaintiffs' counsel Robert Larocca and, later, Mark Rosen and Doug Abrahams.

[37] McKenna Declaration ¶ 10.

[38] *See* May 5, 2006 letter from Plaintiffs' counsel to BASF counsel, Exhibit 6 to McKenna Declaration.

[39] *See* Exhibit 7 to McKenna Declaration.

## III.   ARGUMENT

**A.**   **The Court should deny Plaintiffs' Motion to Compel because there are no pending discovery requests to non-party Akzo or its current or former employees and therefore no basis on which to compel responses.**

    **1.**   **Plaintiffs seek to compel responses to documentary discovery requests to which Plaintiffs agreed Akzo "shall not be required to respond."**

Plaintiffs' Motion to Compel seeks wide-ranging document discovery from Akzo in the form of responses to document requests served in February 2002.[40] But the February 26, 2003 Settlement Agreement between Plaintiffs and Akzo explicitly states that Akzo is not required to respond to *any* pending discovery requests or obligations.[41] Plaintiffs therefore have no basis on which to compel documentary discovery from Akzo.

    **2.**   **Plaintiffs never issued "any new discovery request directed to Akzo" to which non-party Akzo can be compelled to respond.**

The Settlement Agreement confirms that Akzo and its employees are to be treated as non-parties for discovery purposes and further speaks of the need to serve "new discovery," subject to certain conditions.[42] As non-parties, service under Rule 45 (not Rule 34) is required.[43]

Yet, Plaintiffs served no new discovery requests on Akzo or its current or former employees. Because there are no properly outstanding discovery requests, Plaintiffs' Motion to Compel lacks any foundation on which an order compelling compliance can be based.[44]

---

[40]   *See* Plaintiffs' Memorandum at 5; Rubin Affidavit ¶ 2 and Exhibit 1 thereto.

[41]   *See* Exhibit 2 to Rubin Affidavit at ¶ 16 (Akzo "shall not be required to respond to any pending discovery requests or obligations").

[42]   *Id.*

[43]   Fed. R. Civ. P. 34(c)  ("A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45."). Extraterritorial service (on foreign residents and entities, such as Akzo Nobel Car Refinishes BV) must be effected under the terms of the Hague Convention.

Plaintiffs apparently assume that their failure to serve the discovery in question is excused by the language of the Settlement Agreement that requires Plaintiffs to meet and confer regarding the scope of any new document requests and that speaks of this Court's "jurisdiction" in connection with disputes. This assumption is misplaced. To dispense with the requirement of serving discovery would make a mockery of Plaintiffs' agreement to treat Akzo and its employees as non-parties. It would also render meaningless the Settlement Agreement's express reference to "*serving any* new discovery request." Specifically, the Agreement states that "*prior to serving any* new discovery request . . . Plaintiffs' co-lead counsel shall meet and confer with Akzo's counsel." The words "prior to" do not mean "in lieu of." Proper service of any new requests is still required in the event that the meet and confer yields disagreement. Only then is the matter ripe for submission of the dispute to the Court, *after* which the Court will "retain jurisdiction over all issues relating thereto." At present, the Court simply does not have jurisdiction over the twelve individuals Plaintiffs seek to depose.[45]

---

[Footnote continued from previous page]

[44] *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3rd Cir. 1995) (denying motion to compel where moving party did not serve discovery); *Davenport v. St. Mary Hosp.*, 633 F.Supp. 1228, 1231 (E.D.Pa. 1986) ("A motion for an order to compel discovery is appropriate only after an opposing party has failed to comply with a discovery request made pursuant to specific provisions of the Federal Rules of Civil Procedure."); *See also Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001) ("Any interrogatories or requests for production of documents served on [dismissed] non-parties are a nullity. Discovery of non-parties must be conducted by subpoena pursuant to Fed.R.Civ.P. 45, not the rules governing discovery of parties.")

[45] *Cf. in re Johnson & Johnson*, 59 F.R.D. 174, 177 (D.Del. 1973) (service of subpoenas directed to individual officer on corporation's registered agent does not fulfill Rule 45(c) requirement of personal service).

**B.    Plaintiffs' Motion to Compel ignores their obligation to meet and confer before seeking further discovery from Akzo.**

In accordance with the Settlement Agreement, "prior to serving any new discovery request directed to Akzo or its current or former officers or employees, Plaintiffs co-lead counsel shall meet and confer with Akzo's counsel to seek agreement on the proposed discovery request . . . ."[46] Plaintiffs did not do so. Prior to filing their Motion to Compel, Plaintiffs' discussions with Akzo were limited to three things: (1) a request that Akzo provide personal files for certain individuals, to the extent they exist; (2) requests for interviews of three individuals, and possibly depositions to follow; and (3) a request for further interviews with Akzo personnel to assist Plaintiffs in interpreting transactional data.[47] Plaintiffs' Motion to Compel goes far beyond these previous topics of discussion.

Plaintiffs' Motion to Compel seeks responses to document requests the parties were not conferring on and that Akzo is excused from responding to under the Settlement Agreement. Plaintiffs also demand an order compelling production of personal files from Jan Van't Riet, who retired to Europe in 1988, five years prior to the start of the relevant period, and from two individuals (Gerald Burt and Egbert Steenhuis) whose files Akzo located and offered to produce but Plaintiffs never requested. Plaintiffs further seek interviews, and then, at Plaintiffs' option, depositions of twelve former and current employees of Akzo, including van't Riet, secretarial employees and several ex-employees and/or individuals in Europe. Finally, Plaintiffs demand a third interview with Akzo personnel and their expert regarding Akzo's previously provided and discussed transactional data. These broad, schizophrenic requests are largely put to Akzo for the

---

[46] *Id.* ¶ 16(c)

[47] October 5, 2005 letter from Plaintiffs' counsel to Akzo counsel, copy attached as Exhibit 4 to Rubin Affidavit.

first time in Plaintiffs' Motion to Compel. As noted above, Plaintiffs and Akzo were conferring regarding the production of personal files of certain identified individuals. Akzo located the personal files that exist, reviewed, prepared and offered to produce them. Plaintiffs also requested interviews of three individuals. Akzo made the only individual in the United States, a retired general manager of its U.S. car refinishing business, available for an interview which took place on March 23, 2006. And Akzo has, not once, but twice, engaged in extended interviews with Plaintiffs' and their experts regarding Akzo's transactional data.

For the first time since settlement, Plaintiffs now seek additional, extensive discovery of documents located not only in the United States, but in Europe as well. Plaintiffs also seek interviews of numerous persons, most of whom are no longer employed in Akzo's car refinishing business and/or are not located in the United States – despite the fact that interviews are not permitted by the Settlement Agreement. In seeking discovery for the first time in their Motion to Compel, Plaintiffs have breached their obligation under the Settlement Agreement to meet and confer with Akzo prior to serving any request for "new" discovery. In addition, seeking discovery initially in a Motion to Compel is improper regardless of the Settlement Agreement.

**C.     Plaintiffs' requested discovery and Motion to Compel are premature because Plaintiffs have not complied with their obligation to treat Akzo as a discovery source of last resort.**

   **1.     Plaintiffs are precluded from seeking any documentary discovery from Akzo until after Plaintiffs have served all remaining Defendants with such discovery and resolved all motions to compel.**

      **a.     The applicable terms of the Settlement Agreement.**

Under the Settlement Agreement, Plaintiffs must treat Akzo as a discovery source of last resort for "purposes of minimizing the burden of discovery on Akzo" – not serving Akzo with

documentary discovery until Plaintiffs have served all remaining Defendants and have resolved all related motions to compel:

> Akzo shall not be subject to further or additional discovery except on the following terms: . . . (c) For purposes of minimizing the burden of discovery on Akzo, Plaintiffs agree that: (1) they shall not seek any documentary discovery from Akzo until after Plaintiffs have served all remaining Defendants in the Actions with document requests and all motions to compel responses to such document requests served on the remaining Defendants have been resolved; . . . . " [48]

This provision of the Settlement Agreement provides important protection to Akzo, requiring Plaintiffs to exhaust other potential discovery sources before seeking similar discovery from the settling Akzo entities.

These protections are all the more meaningful in an alleged multi-defendant conspiracy case, where evidence of purported conspiracy is not logically available only (or predominantly) from a single defendant. As the smallest player among its co-defendants, Akzo sought this protection in its early settlement and should not be denied it because of Plaintiffs' delay.

### b. Plaintiffs refuse to state that they have served comparable discovery on the remaining defendants and resolved all motions to compel.

Despite Akzo's requests, Plaintiffs' refuse to state that they have served all remaining Defendants with comparable discovery requests and resolved all related motions to compel. In a meet and confer with Plaintiffs' counsel on September 30, 2005, Akzo counsel asked Plaintiffs to confirm that Plaintiffs had sought and obtained comparable discovery from the remaining Defendants, Sherwin Williams, PPG, DuPont and BASF. Plaintiffs responded by stating the discovery from DuPont and BASF had "no bearing" on Akzo's remaining discovery obligations "because varying discovery obligations exist with respect to each defendant's Settlement

---

[48]  Settlement Agreement ¶ 16, Exhibit 2 to Rubin Affidavit.

Agreement."[49]  The fact that DuPont and BASF may have varying discovery obligations under their Settlement Agreement may be true, but it does not alter the earlier settlement with Akzo. That earlier settlement protects Akzo from documentary discovery until Plaintiffs' seek equivalent discovery from all remaining Defendants and resolve all motions to compel.[50]

DuPont and BASF are "remaining Defendants" as that term is used in the Akzo Settlement Agreement. At the time of that settlement, DuPont and BASF were still defendants in the litigation and the term "Defendants" is defined to include "Akzo Nobel Car Refinishes B.V., Akzo Nobel Coatings Inc., PPG Industries, Inc., E.I. DuPont de Nemours and Company, DuPont Performance Coatings, Inc., Sherwin-Williams Co., Sherwin-Williams Automotive Finishes Corporation, BASF Aktiengesellschaft, BASF Coatings AG, and BASF Corp."[51]  Following the settlement with Akzo, the "remaining Defendants" were and are the PPG, DuPont, Sherwin-Williams and BASF entities listed above. These are the entities that Plaintiff must serve with comparable document discovery and resolve any motions to compel with before Plaintiffs can serve new document discovery on Akzo.

The Court's October 26, 2005 Amended Pretrial Scheduling Order does not alter this requirement. That Order required Plaintiffs to defer seeking discovery from Akzo, DuPont and BASF until Plaintiffs "ha[d] substantially completed deposition discovery from the two non-

---

[49]  October 5, 2005 letter from Plaintiffs' counsel to Akzo's counsel at page 1, copy attached as Exhibit 4 to Rubin Affidavit.

[50]  Plaintiffs' refusal to state that they have sought comparable discovery from the remaining defendants demonstrates either (a) that Plaintiffs intend to pursue such discovery and have thus not yet substantially completed discovery or (b) that the discovery sought from Akzo is aberrational and therefore of no material importance to the Plaintiffs' case.

[51]  Settlement Agreement, page 1, Exhibit 2 to Rubin Affidavit.

settling defendants."[52]  The Amended Pretrial Scheduling Order does not, however, eliminate Plaintiffs' obligation to substantially complete discovery from DuPont and BASF before seeking discovery from Akzo.  If it did, it would unfairly alter Akzo's Settlement Agreement and the requirement that Akzo be treated as a discovery source of last resort.

Plaintiffs' Motion to Compel itself admits, albeit indirectly, that Plaintiffs have not completed document discovery from the remaining defendants.  Plaintiffs state that they "have in fact made similar discovery requests to DuPont and BASF," but they completely omit any reference to whether responses have been provided or whether Plaintiffs will move to compel [53]  Moreover, Plaintiffs state that they are "serving PPG and Sherwin Williams with numerous document requests."[54]  Plaintiffs therefore admit that they have not served all remaining Defendants with discovery requests and resolved motions to compel before seeking discovery from Akzo.

### c.    Plaintiffs have not completed their documentary discovery from the remaining Defendants

On April 28, 2006, Plaintiffs served Class Plaintiffs' Fourth Set of Document Requests Directed to Defendants Sherwin-Williams and PPG.[55]  Plaintiffs' requests, issued roughly one month before the then current discovery cut-off date, seek, among other things, "all documents . . . which reflect, refer or relate to: a  profitability, gross margins, profit margins or markups on sales of automotive refinishing paint, fleet paint, or industrial paint in the United States,

---

[52]  Exhibit 5 to Rubin Affidavit.
[53]  Plaintiffs' Memorandum at 8.
[54]  *Id.*
[55]  Copy attached as Exhibit 7 to McKenna Declaration.

Canada, Mexico, South America, and Europe."[56] The requests seek detailed information not only on automotive refinishing paint sales and costs, but sales and costs of fleet paint and industrial paint, which presumable includes OEM paint, sign paint and other undefined paints. In addition, the requests are not limited to sales and costs in the United States, but include all sales throughout the U.S., Canada, Mexico, South America and Europe from 1990 through 2005. The breadth of these requests is almost certain to meet resistance from Sherwin-Williams and PPG and result in further discovery disputes. Any such disputes, under the terms of Akzo's Settlement Agreement, must be resolved before Plaintiffs serve document requests on Akzo.

Plaintiffs also request documentary discovery from BASF and DuPont in connection with witness interviews and depositions.[57] Plaintiffs' own documents show that they have not complied with their obligation under the Settlement Agreement to complete documentary discovery from the remaining Defendants before seeking it from Akzo.

> **2.    Plaintiffs have not "substantially completed taking depositions of the remaining Defendants and their current or former officers and employees" as required by the Settlement Agreement.**

Plaintiffs' agreed in their settlement with Akzo that "they shall not seek to take any depositions of Akzo or its current or former officers or employees until after Plaintiffs have substantially completed taking depositions of the remaining Defendants and their current and former officers and employees . . . ."[58] Yet, while moving to compel Akzo to provide twelve witnesses for interviews and then, at Plaintiffs' option, depositions, Plaintiffs were

---

[56] *Id.* at Request No. 3. The extension of the discovery cutoff into September makes it all the more likely that Plaintiffs are not now substantially finished with their own discovery.

[57] *See* May 11, 2006 Notice of Deposition and documents requests to DuPont regarding May 30 and June 1 depositions and May 5, 2006 letter to BASF counsel, Exhibits 8 and 6, respectively, to McKenna Declaration.

[58] Settlement Agreement ¶ 16(c)(2).

simultaneously issuing subpoenas or deposition notices for numerous Sherwin-Williams and PPG witnesses for depositions to take place during the later half of May.[59]  In addition, Plaintiffs are still in the process of interviewing and deposing many BASF and DuPont witnesses.[60]  With discovery now extended into September, Plaintiffs will presumably extend their interviews and depositions of remaining Defendants throughout the summer.

Plaintiffs have not "substantially completed taking depositions of the remaining Defendants and their current or former officers and employees" as required by the Settlement Agreement.  Plaintiffs therefore cannot, at this time, seek to take any depositions of Akzo or its current or former officers or employees.

Plaintiffs need not have waited until the impending close of discovery to begin their discovery effort in earnest.  Yet they did, and are now seeking to gather all discovery from all defendants (present and former) at the same time in a manner that unavoidably creates inefficiency, disorganization and duplication and surely does not "minimiz[e] the burden of discovery on Akzo."  Akzo should not be penalized and lose its protections under its Settlement Agreement because Plaintiffs were dilatory in their discovery efforts against the remaining Defendants.

> **3.    Plaintiffs' purported Notice of Deposition, sent to Akzo on May 11, 2006, purportedly requiring Akzo to bring twelve witnesses to Georgia in the last week of May to provide deposition testimony and produce documents is ineffective.**

Perhaps realizing that there were no discovery requests pending against Akzo, Plaintiffs, on May 11, 2006, issued a purported Notice of Deposition.  This document purports to require

---

[59]  McKenna Declaration ¶ 10.
[60]  *See* Exhibits 6 and 8 to McKenna Declaration.

twelve individuals[61] whom Plaintiffs' describe as "current and/or former employees of Akzo Nobel Car Refinishes B.V. and/or Akzo Nobel Coatings Inc." to come to the offices of Esquire Deposition Services in Atlanta, Georgia to give deposition testimony in the last week of May. The document further purports to require each of these twelve individuals to produce documentary discovery in Atlanta at their depositions.

As Akzo informed Plaintiffs' counsel in a letter on May 15, 2006, the purported Notice of Deposition is wholly ineffective under the Federal Rules of Civil Procedure and under the Settlement Agreement.[62] Akzo and its current and former employees, as non-parties, are under no obligation to respond to a Notice of Deposition. Moreover, before Plaintiffs seek testimony from Akzo witnesses they must (1) substantially complete depositions of the current or former officers and employees of BASF, DuPont, Sherwin-Williams and PPG; (2) meet and confer with Akzo to seek agreement on the proposed discovery request; and (3) failing to reach accord in the meet and confer process, serve the witness with a subpoena to testify and submit the dispute to the Court. Plaintiffs' Notice of Deposition met none of these requirements.

After notifying Plaintiffs of the defects in their purported Notice of Deposition, and consistent with their cooperation in making Akzo's former general manager available for a private interview and a current market manager available for a deposition, Akzo offered to discuss making additional witnesses available to Plaintiffs in a letter dated May 15, 2006.[63] In

---

[61] Those individuals are: Dave Brotheridge, Andy Clawson, Cor de Grauw, Egbert Steenhuis, Johan Lemmers, Pat Marcoullier, Peggy Newall, James Rees, Mike Strawn, Jan Van't Riet, Monique van Welzen and Bridgette Klerk Wolters.

[62] Exhibit 4 to McKenna Declaration.

[63] Exhibit 4 to McKenna Declaration.

an April 18 letter, Akzo's counsel provided Plaintiffs' counsel with several dates and times when he was available to discuss the issue.[64]

**D.      Akzo and its employees, as non-parties, are protected from undue burden or expense arising from Plaintiffs' discovery requests and Plaintiffs should be required to pay for any discovery ultimately ordered.**

Even if Plaintiffs had properly served all of the discovery requests at issue here under Rule 45, Akzo and its current and former employees would be entitled to the protections from undue burden and expense the Federal Rules of Civil Procedure afford non-parties. Under Rule 45(c)(3)(A), a court shall quash or modify a subpoena that fails to allow adequate time for compliance or imposes undue burden. This protection is mandatory, not discretionary.[65]

This Court previously addressed the appropriateness of certain document requests served on defendants in this action.[66] But this Court correctly employed a different analysis when it addressed the requirement that a foreign, non-party respond to discovery.

On June 29, 2005, this Court granted in part and denied in part Plaintiffs' Motion to Compel Production from non-party CEPE.[67] The Court stated that a "discovery objection based

---

[64]  May 18, 2006 letter from Akzo counsel to Plaintiffs' counsel at 2, Exhibit 5 to McKenna Declaration.

[65]  *See Linder v. Caldero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).

[66]  October 29, 2004 Memorandum & Order on Defendants' Motion for Clarification of the Court's October 13, 2003, Discovery Order. (Copy attached as Exhibit 9 to McKenna Declaration).

[67]  June 29, 2005 Memorandum & Order on Plaintiffs' Motion to Compel the European Council of the Paint, Printing Ink and Artists' Colours Industry ("CEPE") to Respond to Plaintiffs' Request for Production of Documents (Copy attached as Exhibit 10 to McKenna Declaration). CEPE is a European entity, like Akzo Nobel Car Refinishes BV and like many of the twelve purported deponents, and it was brought before the court only because Plaintiffs were able to serve a Rule 45 subpoena issued by the United States District Court for the District of Columbia on its Secretary General while he was temporarily present in the District. *Id.* at 24.

on 'undue burden' can be evaluated by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"[68]  In this evaluation, a "witness's status as a nonparty to the litigation should also be considered."[69]  The fact that Akzo was once a party does not change this analysis.  If anything, Akzo's payment of $18.75 million in settlement funds to the class should enhance its protections from undue burden, not diminish them.

Ultimately, the Court "impose[d] several limitations and restrictions on Plaintiffs' requests for production of documents" to CEPE.[70]  First, the Court narrowed the time limitations for Plaintiffs requests.  Second, the court ruled that CEPE was not required to comply with a request seeking all documents concerning CEPE's public advocacy because such information was not related to the alleged price fixing conspiracy and publicly released documents may be available from other sources.  Third, CEPE was not required to comply with a request for documents reflecting ownership of automotive refinishing paint plants, because "[t]his information may be obtained directly from the automotive paint manufacturers."[71]  Finally, the Court required Plaintiffs to compensate CEPE for the costs of production.[72]

The protections afforded to Akzo and its current and former employees should be no less than those the Court afforded to CEPE.  As non-parties, Akzo and its employees should not be

---

[68] *Id.* at 26, citing *Gabe Staino Motors v. Volkswagen of Am.*, Civ. A. No. 99-5034, 2003 U.S. Dist. LEXIS 3194, at *5 (E.D. Pa. Fed. 28, 2003) (quoting *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998).

[69] *Id.*

[70] *Id.* at 27, citing *In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. at 430.

[71] *Id.* at 28.

[72] *Id.*

required to respond to discovery that maximizes (rather than minimizes) burdens through requests that are at best scatter-shot, duplicative and cumulative. While Akzo submits that no further discovery may or should be ordered, it requests in the alternative that no discovery be ordered unless Plaintiffs are required to pay the cost of compliance by non-party Akzo.

## IV.   CONCLUSION

Akzo respectfully submits that as non-parties it and its current and former employees should not be compelled to respond to burdensome discovery that was never served or is otherwise invalid under the parties' Settlement Agreement. Nor should Plaintiffs' lack of diligence in pursuing discovery from the other defendants deprive Akzo of its bargained-for protection from premature, duplicative and cumulative discovery. Finally, if any discovery is ordered (and Akzo submits that none should be), Plaintiffs should be required to pay the costs of providing such discovery.

Dated:  May 30, 2006

Respectfully submitted,

N, J. G——

Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Ave.
Los Angeles, CA  90071
Telephone:  (213) 229-7000

Stephen C. McKenna
GIBSON, DUNN & CRUTCHER LLP
1801 California, #4200
Denver, CO  80202
Telephone:  (303) 298-5700

Nancy J. Gellman
CONRAD O'BRIEN GELLMAN & ROHN
P.C.
1515 Market Street, 16th Floor
Philadelphia, PA  19102
Telephone:  (215) 864-8065
Fax:  (215) 864-9620

Attorneys for Defendant Akzo Nobel Car
Refinishes B.V. and Akzo Nobel Coatings
Inc.

Opposition doc

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Akzo Nobel's Memorandum Of Law In Opposition To Plaintiffs' Motion To Compel and proposed Order have been filed electronically and are available for viewing and downloading on the Electronic Case Filing System of the United States District Court for the Eastern District of Pennsylvania and were also served by first class mail on the persons listed below.

_____
Nancy J. Gellman
Attorney for Akzo Nobel Car Refinishes B.V.
and Akzo Nobel Coatings Inc.

Dated: May 30, 2006

### PLAINTIFFS' CO-LEAD COUNSEL

Mark R. Rosen
William J. Ban
Jeff B. Gittelman
BARRACK, RODOS & BACINE
2001 Market Street
3300 Commerce Square
Philadelphia, PA 19103

Warren Rubin
Tina Moukoulis
LAW OFFICES OF BERNARD M.
GROSS, P.C.
John Wanamaker Bldg., Suite 450
Juniper & Market Streets
100 Penn Square East
Philadelphia, PA 19107

Joseph C. Kohn
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street
Suite 1100
Philadelphia, Pa 19103

**PLAINTIFFS' EXECUTIVE COMMITTEE**

H. Laddie Montague, Jr.
Merrill G Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103

Donald Perelman
Roberta D. Liebenberg
FINE, KAPLAN & BLACK, R P.C.
1835 Market Street, 28th Floor
Philadelphia, PA  19103

Michael M. Buchman
MILERG, WEISS, BERSHAD
& SCHULMAN LLP
One Pennsylvania Plaza, 49th Floor
New York, NY  10119

Robert N. Kaplan
Richard J. Kilsheimer
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY  10022

## CO-DEFENDANT'S COUNSEL

Michael T. Scott
Wayne Stansfield
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

**Counsel for Defendant
PPG Industries, Inc.**

Lawrence R. Desideri
W. Gordon Dobie
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois  60601

**Counsel for Defendant
PPG Industries, Inc.**

Howard D. Scher
Steven E. Bizar
BUCHANAN INGERSOLL P.C.
1835 Market Street, 14th Floor
Philadelphia, PA  19103-2985

**Counsel for Defendant
Sherwin Williams**

Jonathan Berman, Esq
Jones, Day, Revis & Pogue
51 Louisiana Avenue, N.W.
Washington, D.C.  20001